UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JODY ALAN HOWLAND,

        Plaintiff,              Case No. 1:24-cv-1332

v.                                          Honorable Phillip J. Green

UNKNOWN HENSON, et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

**I.     Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MCF Nurse Practitioner Unknown Henson, MCF Licensed Practical Nurse Unknown Thompson, and the MDOC. (Compl., ECF No. 1, PageID.1–2.) Plaintiff sues Defendants Henson and Thompson in their respective individual and official capacities. (*Id.*)

Plaintiff alleges that on March 21, 2022, he tore his Achilles tendon playing basketball. (*Id.*, PageID.3.) Plaintiff went to "medical." (*Id.*) He was given ice, crutches, and an Ace bandage; x-rays and a follow-up examination were order. (*Id.*) Plaintiff notes that the x-rays were never completed. (*Id.*)

On March 24, 2022, Plaintiff was provided his follow-up examination with Defendants Henson and Thompson. (*Id.*) They immediately sent Plaintiff to a hospital in Muskegon. (*Id.*) The emergency room doctor at the hospital determined that Plaintiff had suffered a partial tendon rupture and ordered Plaintiff to see a specialist. (*Id.*) Plaintiff was sent back to the prison with a "boot." (*Id.*)

On April 27, 2022, Plaintiff saw an orthopedic specialist, Dr. Jeffery Anhalt. (*Id.*) Dr. Anhalt told Plaintiff that if the prison had gotten Plaintiff to the specialist sooner, the doctor could have repaired the rupture with surgery. (*Id.*) But, because of the delay, the rupture had begun to heal over. (*Id.*) Nonetheless, Dr. Anhalt

provided Plaintiff a set of "wedges" and told Plaintiff that if his conditioned worsened he should call the doctor's office and the doctor would perform surgery. (*Id.*)

The next day, April 28, 2022, Plaintiff told the healthcare personnel at the prison that he was in pain and that he needed surgery. (*Id.*) The healthcare personnel ignored him. (*Id.*) Instead they put Plaintiff through a physical therapy evaluation. (*Id.*)

Thereafter, Plaintiff sent a kite asking to be sent back to the specialist because of pain. (*Id.*) Again, Plaintiff was ignored. (*Id.*)

On June 29, 2022, "it was determined [that Plaintiff should] continue to wear the boot." (*Id.*) Plaintiff reports that he continued to endure the pain. (*Id.*)

On July 22, 2022, Plaintiff again contacted healthcare about the pain. (*Id.*) X-rays were ordered and, apparently, based on the x-rays, Plaintiff was again scheduled for an orthopedic consultation. (*Id.*)

On September 19, 2022, Plaintiff saw the specialist. (*Id.*) The specialist took Plaintiff "off the boot." (*Id.*) The specialist again informed Plaintiff that if the prison had gotten Plaintiff to the specialist sooner he could have fixed it. (*Id.*)

Plaintiff contends that it is because of MDOC medical staff members'[2] inability to take his pain and suffering seriously and their failure to honor Plaintiff's follow-up requests, that Plaintiff has been forced to live with the continuous injury. (*Id.*) Plaintiff reports that he filed many follow-up kites and, then, on July 22, 2024, filed

---

[2] When setting forth this allegation, Plaintiff "specifically" identifies Defendants Henson and Thompson and non-party Registered Nurse Laura Mitteer. (Compl., ECF No. 1, PageID.3.)

5

a grievance. (*Id.*, PageID.4.) At Step 1 of the grievance process, Plaintiff's grievance was denied. (*Id.*) He filed a Step 2 appeal, but never received a response. (*Id.*) Instead of pursuing the matter further, Plaintiff filed suit. (*Id.*) Plaintiff refers the Court to attachments; but the complaint filed did not include any attachments.

Plaintiff asks the Court to order the following injunctive relief: "direct the MDOC to institute protocols that require nurses and health services to follow-up with patients." (*Id.*, PageID.5.) Additionally, Plaintiff asks the Court to order surgery to mend Plaintiff's Achilles tendon. (*Id.*) Plaintiff notes that his condition has worsened causing Plaintiff to have a "drop foot" condition. (*Id.*) Finally, Plaintiff asks the Court to award compensatory damages in the amount of $100,000.00, and punitive damages in the amount of $50,000.00 from each defendant "for acting with reckless indifference to [Plaintiff's] rights." (*Id.*)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff's indication that Defendants ignored his pain and were recklessly indifferent to his rights implicates the Eighth Amendment's ban of cruel and unusual punishment.

### A.    A Violation Committed by a Person

Plaintiff names the MDOC as a Defendant; however, Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief

7

requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771.

Because Defendant MDOC is not amenable to suit under § 1983, Plaintiff has failed to state a claim against the MDOC upon which relief may be granted. Therefore, Plaintiff's complaint against the MDOC will be dismissed for failure to state a claim.

## B. Eighth Amendment Claim for Deliberate Indifference to a Serious Medical Need

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to

9

what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

"Courts have generally agreed that a ruptured Achilles tendon is a serious medical need." *Bradford v. Owens*, No. 3:11-CV-P488-DJH, 2016 WL 7015662, at *8 (W.D. Ky. Nov. 29, 2016) (collecting cases). The court in *Petties v. Carter* explained the seriousness of the injury:

> An Achilles tendon rupture is a tear in the tendon which impedes the ability of the foot to point downward, causing pain and limiting mobility. Walking around on a ruptured tendon exacerbates the injury, increasing the gap between the torn edges of a tendon because of the way that

10

> muscles contract in the foot and calf. Immobilizing the injured foot prevents stretching of the tear and allows the torn edges of the tendon to sit together, and scar tissue to form, rejoining the edges. When an Achilles rupture is not immobilized, the stretching apart of the torn tendon edges when the injured foot hits the ground causes severe pain and weakness.

836 F.3d 722, 726 (7th Cir. 2016). For purposes of this preliminary analysis, the Court concludes that Plaintiff's allegations regarding his Achilles tendon injury support an inference that he experienced a serious medical need.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be

> repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received

treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

It is against that backdrop that the Court will consider Plaintiff's allegations regarding the individual Defendants.

In Plaintiff's chronological factual statement, the only specific conduct he ties to Defendants Henson and Thompson is the following: "On 3/24/2022 there was a follow-up with NP Henson and Nurse Thompson. After being examined, I was immediately sent out to Muskegon Mercy [Hospital]." (Compl., ECF No. 1, PageID.3.) The conduct described does not support an inference that Defendants Henson or Thompson were deliberately indifferent on March 24, 2022.

Plaintiff also offers the following: "Because of MDOC medical staff's (specifically NP Henson, and RN Thompson, and RN Laura Mitteer) inability to take my pain and suffering serious[ly] and failing to honor my follow-ups request, I have had to live with this continuous injury." (*Id.*) That allegation, however, is entirely conclusory. It fails to indicate what the Defendants and Mitteer said or did to minimize Plaintiff's pain or suffering or to reject Plaintiff's follow-up requests—or when they said or did those things.

13

Plaintiff was provided a boot at the hospital. (*Id.*) Plaintiff continued to wear the boot, with the specialist's blessing, until September 19, 2022. (*Id.*) Thus, it is not that Plaintiff was denied treatment; rather, he was denied the treatment that he preferred. Other than surgery, Plaintiff fails to identify any other treatment that might have helped him. With regard to surgery, Plaintiff does not suggest that either of the nurse Defendants were in a position to authorize or refuse that intervention. Moreover, beyond suggesting that surgery immediately after the injury might have helped, based on Plaintiff's allegations, even the specialist never specifically recommended surgery.

In summary, the only specific allegations against Defendants Henson and Thompson do not support an inference of deliberate indifference. Plaintiff's remaining allegations of misconduct are either not attributed to Henson or Thompson or are conclusory and attributed to a trio of nurses. Plaintiff's "[s]ummary reference to a single, five-headed 'Defendants' [or, here, trio of nurses] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)).

Accordingly, for all of these reasons, the Court concludes that Plaintiff has failed to state an Eighth Amendment deliberate indifference claim against Defendant Henson or Defendant Thompson. Plaintiff complaint against those Defendants, therefore, will be dismissed for failure to state a claim.

14

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed without prejudice for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:  March 14, 2025                                /s/ Phillip J. Green
                                                                             PHILLIP J. GREEN
                                                                             United States Magistrate Judge